# EXHIBIT A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT, FIRST DISTRICT**

2025L009008
Judge: Calendar, I

**JOHN DOE** (pseudonym for Amir Marmarchi),
Plaintiff,

v.

**ALLIANZ GLOBAL ASSISTANCE USA**, a subsidiary of AGA Service Company,
Defendant, and their representatives in Illinois on their behalf

Case No. _____

**COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, CONSUMER FRAUD, AND OTHER RELIEF**

**Plaintiff**, appearing pro se under the pseudonym "John Doe," for his Complaint against Defendant Allianz Global Assistance USA ("Allianz"), states as follows:

---

### I. JURISDICTION AND VENUE

1. The plaintiff is a resident of McLean County, Illinois, who frequently works in or near Cook County and chooses Cook County as a venue under 735 ILCS 5/2-101, as Defendant Allianz does business in Cook County and maintains registered agents there.

2. Defendant Allianz is an insurance provider doing business throughout Illinois, including Cook County, and is subject to service via its registered agent, CT Corporation System (May also operate as AGCS MARINE INSURANCE COMPANY in the same address), 225 W Washington St, Suite 1800, Chicago, IL, 60606.

3. The amount in controversy exceeds $50,000. Jurisdiction lies in this Court.

---

### II. FACTS

4. In October 2022, Plaintiff purchased a travel insurance policy from Allianz covering international travel in November 2022.

5. The insurance policy covered emergency medical treatment and travel interruption.

6. While traveling abroad in the Republic of Georgia, Plaintiff experienced a medical emergency, hospitalized for five days, and incurred $16,811.32 in hospital expenses.

7. As a direct result of the hospitalization and post-release illness, Plaintiff had to cut his travel short and incurred $1,144.02 in excess costs for emergency return travel back home to the United States.

8. The plaintiff submitted his claim to Allianz in late November 2022. Two separate claims were opened with claim numbers 0008694779-001 and 0008694779-002.

9. In a period of 7 months after that numerous Allianz representatives, and supervisors in more than 20 recorded phone calls insisted and assured the plaintiff that his sent claim documents were complete and satisfying all the requirements, and no further action was needed by plaintiff.

10. Plaintiff, relying on these representations, refrained from filing legal action or seeking external remedies, believing the claim was resolved.

11. Dozens of supervisors and examiners even assured plaintiff that payment was imminent, in 48 hours, or in 24 hours many times.

12. One of those numerous supervisors who insisted the payment was ready, instructed the plaintiff that to expedite the payment, he should fill out the direct deposit form that she was about to send to the plaintiff.

13. When the Plaintiff immediately tried to fill out that payment form in the email that supervisor sent him, he got the message "this case has already been paid out".

14. After many more calls, ultimately, Allianz supervisors sent plaintiff another form to which he immediately responded by filling out his bank account information, and Allianz confirmed the receipt of bank account and once again promised imminent payment to the designated bank via direct deposit.

15. In subsequent contacts, Allianz representatives insisted that the payment had been already sent and when the plaintiff reminded them that he had chosen direct deposit and had got nothing in that designated bank account, Allianz representatives insisted that payment has been made and there is nothing else they can do, but then they changed their narrative to "we must have mailed you a paper check", and yet again many more representatives asked the plaintiff to sit tight and look for the check in mail for weeks and months.

16. Against all the numerous claims of Allianz for weeks no payment was ever made, neither by direct deposit nor by mailing any check.

17. When facing this critical question of why the Allianz claim page always showed claim status as "more documents needed", these numerous Allianz supervisors and

adjusters all advised the plaintiff that their website has glitches that can't be fixed and hence not to be trusted and assured him that he can trust the live agents and supervisors words when they promise no further action is needed and the case is complete and approved and payment is on the way.

18. In the meantime, Allianz claim page never stopped to demand for the same documents that had been sent over and over in numerous ways. Essentially Allianz created a double narrative game with two totally opposite narratives, one offered by human agents on phone, according to whom the case is over and approved and no further document or action is needed, and a second narrative by their webpages showing otherwise, that more documents needed and case is on hold.

19. This game of contraction that Allianz has used against the plaintiff and many more (according to their BBB reviews) resulted in an inescapable perpetual limbo, in which Allianz did not have to deny or approve the case and could just go on with this contradictory vexatious double narrative forever.

20. Despite those representations, no payment was ever made.

21. Allianz changed the examiner of this case 4 or 5 times, to further delay and restart the processing of the claim. All but one of these examiners (who only called once) never returned the phone call or spoke with the plaintiff and the last one who called once apologized for all the mistakes and delays she described as untenable and nonsense and promised to make whoever has hold up this case to stop it.

22. But the next day she went to hiding as she had given a wrong phone number of someone else as her direct number and only sent an email in which she resorted to the same vague excuse of "more documents needed" that she had described nonsense the day before on phone, and then she totally disappeared and never responded.

23. Plaintiff attempted more phone calls after disappearance of the 4th or 5th examiner, which resulted in two more examiners telling him the same thing "your payment is approved and about to be sent, and no more action is needed", but then when plaintiff insisted to talk to his own examiner or someone who could resolve this double narrative game, he was told by low level representatives, that they have been advised that plaintiff is not allowed to speak any higher ups or examiners, which could perpetuate this eternal limbo state without any approve or deny decision.

24. Only by miraculous discovery, in Mid Jun 2023, plaintiff found the name, email and cell phone number of Allianz director of claim, Dennis Ingersoll, which opened a path to break out of the eternal limbo of not being allowed to talk to anyone with authority and having to live under eternal double narrative and not even being able to receive a denial letter.

3

25. After several messages on phone and emails left, the director of claims, Mr. Dennis Ingersoll, returned a call and promised to resolve this double narrative and either approve or deny the case and if denial be the outcome, then mention the reasons for denial.
26. Mr. Ingersoll finally sent a denial letter, but failed to offer what he had promised, to offer specific reasons for denial, as the so-called denial letter lacked any specific reason for denial, in violation of 215 ILCS 5/154.6.
27. The denial letter in essence said as reason for denial that a claim can be rejected for any reasons and many reasons, and then referring to a list of examples of possible reasons for which any typical claim can be denied, all of which had either nothing to do with plaintiff's case or had already been satisfied by plaintiff and satisfaction admitted by Allianz. The letter totally failed to refer to the reason(s) that plaintiff's case was being denied.
28. During Jun 2023, in several phone conversations, first with the 4th or 5th claim examiner Mrs. Terri Santora and then upon her hiding (giving wrong phone number and not responding to emails) with several other examiners and then finally with director of claims Mr. Ingersoll-on recorded lines, they had all agreed on phone that HIPAA form had no relevance nor jurisdiction to this case and it must have been added to the list of requirements due a glitch, and advised plaintiff to ignore it.
29. When the plaintiff asked Mr. Ingersoll to drop this HIPAA form as a requirement if he truly thought it was irrelevant or otherwise say what other document was relevant and still missing, Mr. Ingersoll on recorded line said he knew that HIPAA is irrelevant, but he said there must be some other relevant authorization form, but he said he did not know what they could be.
30. Upon plaintiff's further pushes to receive a real reason for denial, on Jun 25 2023, Mr. Ingersoll, in his email response referred to an authorization being missing as the reason for denial. Not only this was against everything else they had said before, but also this was a very vague double or triple narrative position, as first they had sent plaintiff HIPAA form, then had told him to ignore it as they described it as irrelevant, then said there must be something else for authorization that they don't know, and finally when pushed for a real denial reason resorting back to the absence of that unknown thing that even they don't know what it is, as the reason for denial.
31. In essence, after numerous rounds of sending everything Allianz demanded, they said absence of an either "irrelevant" or "unknown" is the reason for denial. Not just flip flopping during the claim, but even their last email that seemingly offered a reason for denial failed to say which one of all possible reasons for denial.
32. In absence of any transparency in that nearly-impossible-to-obtain denial letter and their subsequent contacts, only two guesses can be drawn out of their vague

4

language in the last email from Mr. Ingersoll in Jun 25 2023. That their denial reason is either "Irrelevant" if one subscribes to their first narrative that HIPAA was needed, essentially, they demanded something which they were aware and confessed to its irrelevance. Or alternatively their denial could have been due to that "unknown", if one subscribes to their second narrative that denial is not due to HIPAA, but due to absence of that something else that they never sent to the plaintiff to be filled out, because they did not know what it is either, but they still believed that "unknown" is necessary.

33. Both sides of their double face narrative are untenable and against good faith practice and add nothing but more bad faith to their already massive body of vexatiousness bad faith acts in this case.

34. Allianz ultimately never paid the claim contradicting numerous prior confirmations, but they also failed to even properly deny the case, also contradicting numerous prior confirmations.

35. Plaintiff can provide recordings, and requests Defendant produce all (and not a subset of) its own call recordings, to prove numerous agents gave the same false assurances of case being approved and in payment stage, making it a systemic practice, not an isolated error.

36. Plaintiff's total documented claim is $17,955.34.

37. Due to Allianz's bad faith, Plaintiff suffered financial hardship, emotional distress, and continued uncertainty over a period of nearly two years.

38. Interest has accrued since January 1, 2023, in excess of $3,000.

39. Plaintiff seeks $60,000 in punitive damages for Defendant's vexatious and deceptive conduct.

## III. CLAIMS FOR RELIEF

### Count I: Breach of Contract

40. Allianz breached its insurance contract by failing to pay a valid claim.
41. Plaintiff fully complied with policy terms and provided all documentation.
42. Plaintiff seeks judgment for $17,955.34.

### Count II: Bad Faith under Illinois Insurance Code (215 ILCS 5/154.5 and 215 ILCS 5/154.6)

43. Allianz engaged in unreasonable delay and misrepresentation in violation of Illinois law.
44. Plaintiff seeks compensatory and punitive damages for bad faith conduct.

### Count III: Consumer Fraud (815 ILCS 505/2)

45. Allianz engaged in deceptive and unfair business practices.
46. Plaintiff relied on misrepresentations to his detriment.

### Count IV: Equitable Estoppel

47. Allianz repeatedly assured Plaintiff the claim was approved.
48. Plaintiff reasonably relied on these assurances.
49. Allianz is estopped from now denying the validity of the claim.

## IV. RELIEF REQUESTED

Plaintiff respectfully requests:

- Judgment for $17,955.34 in damages;
- Interest from January 1, 2023 (approximately $3,000);
- $60,000 in punitive damages for vexatious and deceptive conduct;
- An order requiring Allianz to produce all relevant phone call recordings;
- Court costs and such other relief as the Court deems just.
- Award any further relief the Court deems just

## V. CONFIDENTIALITY MOTION (To Be Filed Simultaneously)

Plaintiff respectfully requests that this matter be sealed from public view, or in the alternative, that Plaintiff be permitted to proceed under pseudonym, due to credible threats to family safety by the Iranian regime if Plaintiff's international travel to meet relatives becomes publicly available through court records.

Respectfully submitted,

**John Doe** (Pseudonym for Amir Marmarchi)
Pro Se Plaintiff
Address to be redacted for confidentiality request:
[Phone/email on file with court only]

*Amir Marmarchi*
Jun 24, 2025

6